May it please the Court, Matt Larson of the Federal Defender's Office for the Appellants. Your Honors, I'll begin with the waiver question. There was no waiver here, either of the right of the parties to plea bargain without the involvement of the District Court or of the right to appeal based on that involvement. The analogous case here, Your Honors, is Gonzalez-Milkor, which was decided last year by this Court and is discussed in my briefs. The facts there were that the individual was convicted after a bench trial, and that at sentencing, the judge said, I'll give you a lower sentence if you waive your right to appeal. The defendant went off to the side, consulted with his counsel, came back and said, okay, we'll take the deal. The judge said, all right, you have the right to appeal. Do you know that? Yes. Do you want to waive that right? Yes. Okay. I find that you've made a knowing waiver. Here's your sentence. This Court reversed, Your Honors. It said the waiver there was invalid and unenforceable because it was secured only by violating Rule 11 and the principles behind it. This Court has long made clear that there's an absolute prohibition on a district court involving itself in the plea negotiations of the parties. This is not only plain error, but the remedy is vacation of the conviction and or resentencing. Doesn't the government agree with you on that? It does, Your Honor. Okay. So essentially, both parties are asking us to vacate all the convictions, and remand all of them for an individualized consideration of the terms of the plea agreement under Morgan. Indeed. Technically, Mr. Gonzales in his briefs is asking for vacation of his conviction, whereas the other two, Mr. Cervantes and Mr. Leon, are asking simply to bring their binding plea to a new judge for consideration on the merits. The principal dispute between the parties is about this. Why should this go to a new judge if the Court were inclined to remand the matter? Right. I think the controlling case here, Your Honor, is Ellis. In Ellis, the situation was that the defendant came with a potentially binding plea with a stipulated sentence. The judge got the PSR, said, I'm not accepting this. I think the sentence is inappropriate. He vacated the plea. He rejected the agreement. And this Court on review, on bank review, in fact, said we're sending this back to a different judge because of the Rule 11 violation and also because the judge in this case has already essentially made up his mind. In Ellis, that was a situation where the Court, after the plea had been before him, he essentially read the PSR and said, oh, this isn't second-degree murder. This is first-degree murder. I'm not going to let you plead a second-degree murder. You're going to have to plead a first-degree murder, and did not give the, give Ellis the opportunity to withdraw that plea. So that's somewhat, I mean, it's very different here. From here, because in all three of these cases, though the binding plea agreement was filed with the Court, Judge Wilson never considered it. So he didn't see that. Now, I understand he's seen the PSRs in all three of the cases. Well, Your Honor is right that in Ellis it was a matter of the judge thinking, oh, I think a higher charge is appropriate in this case. Right. Whereas here it's always been the same charge. The difference here is that the judge thinks a much higher sentence is appropriate. And the taint of having read the PSR is the same. In these cases, the binding plea wasn't put before the judge. The nonbinding plea was. However, the judge then still read all the sentencing submissions, looked at the PSR, and he said, you know what, just as the judge said in Ellis, even though it was a different charge, as the judge in Ellis, the judge here said, I think given the facts of this case, the sentence that you're proposing is insufficient. It's too low. I'm going to give you a much higher sentence. The judge here has made up his mind already. If we were to – if you were to remand the case to the same judge, we'd be putting this judge in the position of asking himself to put out of his mind everything he already knows about these individuals who have already pleaded guilty, by the way, and who, in theory, under Rule 11c1c, would have the right to withdraw their guilty pleas if he now rejects the binding plea agreement. He'd then be in the position of potentially presiding over a trial at which the defendants are contesting guilt when he's already exposed to the fact that they've pleaded guilty and already believes them to be guilty and already has adjudged them guilty. Remember, if these cases go back with the binding pleas, under the rule, if the judge rejects the binding plea, the defendants have the right to go to trial. We'd then be in the position where Judge Wilson, who's already adjudicated these people guilty, is presiding over the trial where the question is their guilt. Clearly, this compromises at least the appearance of justice, Your Honors. That's why this has to be remanded to a different judge. But a trial, I mean, the decision will be made by the jury, not by the judge. Indeed. But I think the Supreme Court in Gregg and certainly this Court in Ellis has recognized the potential, at least appearance, of impropriety. Remember, in Ellis, this Court didn't say we're questioning the subjectivity of the judge, we can't trust the judge. They went out of their way to say we're not doing that. They remanded to a different judge based on the appearance of, rather, to preserve the appearance of justice, that prong of the reassignment test. They said, given the circumstances of this case, given that the judge has already made up his mind, already knows that this person is guilty, the prospect of his then presiding over the remand is going to compromise the appearance of justice. We're not saying it's going to compromise justice, but the appearance. And that's the test. And that's why the case was reassigned. So why doesn't Gonzales ask for reassignment as well? He does, Your Honor. Wait. So you said two of the three asked for reassignment. Oh, I'm saying all three asked for reassignment. The difference between Gonzales is that he was technically asking for vacation or, rather, reversal of his conviction, whereas I think this is a distinction without a difference. At the end of the day, all three are saying, let's go back to the district court, to a different judge. Let's go with the binding pleas we negotiated in the first place with the government, and let's have a judge make an independent decision on the merits in each different case. If your point is that the judge here, the district judge here, already knows that these defendants pled guilty and that's why we should send it to a new judge, won't every new judge who reads Ninth Circuit decisions, if we give you the relief you're asking for, know that? Your Honor is right. All the new judge would have to do is look up the docket or read this opinion. But that judge would not be privy to the PSR. Right. So it really comes down to the PSR more than knowledge that they've previously pled guilty. Indeed. And I think the additional special circumstance of this case in that this judge's policy had been longstanding until now. And, again, there's that added awkwardness of saying, Judge, we know that this has been your policy for years. It's been shown to be erroneous. You now have to stop doing it. I'm not saying the judge isn't capable of doing that. I'm saying to preserve the appearance of justice and to err on the side of caution that the case should be reassigned. So what – so let's just – and factually, what was the period of time during which Judge Wilson refused to honor binding fast-track pleas? As I'm aware, it was at least as early as September of 2010 and before that, because the record reflects that in September 2010, he made clear, he said, your offices should know by now that I don't accept these pleas. And let me say right now, I can quote it for you if you'd like. Let me say this. I'm not going to accept any more 11c1c. Please let your respective offices know. I will not accept them. Make sure your offices know that. That was in September of 2010 before all three of these defendants came to trial. Okay. And then when did he acknowledge that he was going to cease this policy? The case that I'm aware of is the Lopez-Martinez case. In that situation, a mandamus, a binding plea was brought to him when the defendant was trying to plead guilty. The judge said, wait a minute. Are you pleading guilty pursuant to a binding plea? And they said yes. And they said, no, no, no. You should know by now I don't consider those things. Colloquy over. Here's the trial date. That individual took a mandamus petition to this court. The petition pursuant to the rule was served on the judge. And about a month later, the judge brought the parties back and said, okay, I'll hear your plea, and I'll order a PSR, which I'll look at and then decide if I want to accept the plea agreement. So that changed in about February of 2012, if I'm not mistaken. And it's in that case. I don't know if now the judge has made an absolute rejection of his previous policy or it was a case-specific situation. I don't know. But that's the change in Lopez-Martinez. When did Morgan come out? Morgan was 2007, Your Honor. 2007. Okay. So how many of the – how many appeals do you think are out there involving this refused rejection, blanket rejection of the fast-track plea policy? These three that I've – these three before us now, and I believe there's a colleague in my case who's teeing up another appeal that presents the same question. Okay. Is there anything else you want to add? I will – I'll reserve the last minute for rebuttal unless Your Honors have any other questions now. Okay. Let's have a rebuttal. Good morning, Your Honors. May it please the Court, Mark Uhallam on behalf of the United States. I think defense counsel and I are largely in agreement about this case, but I do want to clarify a couple of things about the proper remedy and about the remand issue. On the remedy, as – I realize the remedy that the government suggested in the supplemental letter brief that I wrote and filed with the Court was that it should go back for, as in Anderson, a consideration of whether to accept the binding plea. That is, I now realize, incorrect. I think what the correct approach is the conviction should be vacated, the sentence should be vacated, and we should go all the way back where his plea is off the books as well. And the reason why is that the defendants didn't plead in colloquies that satisfied the 11c1c colloquy. In other words, they actually pleaded on nonbinding pleas. And so to send it back to tell the judge, you know, make a determination whether to accept the binding plea would not be the proper remedy because the plea hearing actually was based on a nonbinding plea. This is sort of a technicality, but to the extent that we now have an opportunity to get everything done the right way. Correctly. So you're saying that the plea colloquy was not correct. For a binding plea. For a binding plea. Yes. Okay. It's a fairly minor point, but I just think in order to make sure everything is done right, the remedy for all three defendants would be vacator of conviction, vacator of sentence, vacator of the plea, and then sending it back. You know, I can tell the court the government will offer these defendants the same binding plea agreements that were initially filed with the court. Presumably the defendants will accept them. But they're serving time right now. Right? Are they all? They're not out on bond. Yes, that's correct. They're serving their sentences. So presumably they would, none of them, they would get credit for time served, but I think the nevertheless the plea agreement would be the same plea agreement. It's just the time served credit would kick in once they're properly processed and back, you know, in BOP post conviction. So let's take this hypothetical. Suppose we do what you suggest. You offer them the same plea. They accept it, and they go back to Judge Wilson, and Wilson does an individualized consideration and decides he won't accept the binding plea agreement. Do they then have the opportunity to withdraw their plea and go to trial? Yes. Well, I think we have the case in which the defendant's case is a case of the defendant not having a binding plea agreement, which puts them in a significantly worse position than their binding plea situation should they lose, especially since they've already pled guilty to the crime. I'm not sure I understand, Your Honor. Are you saying it's significantly worse because they've already spent time in custody? Well, no, because they've already pled. So how do you erase the fact that they've already pled guilty, satisfying the factual predicate condition of Rule 11? So they've pled guilty. So doesn't that come in? That's true in every properly done 11C1C proceeding will operate the way you just described, Judge Wardlaw. The way that the parties, that is, the U.S. Attorney's Office and the Federal Public Defender's Office, would like Judge Wilson and any district court judge to handle these is that the binding plea is presented. Some judges will just accept it on its face. But usually what the more cautious judges, careful judges will do is order a PSR. They'll take the plea. In other words, the defendant will get up and say I'm guilty. Without accepting the agreement. But without accepting the agreement, they'll read the PSR and then they'll say I've looked at the PSR and I think that this is too high or this is too low. And at that point, the defendant has the opportunity to withdraw. And if he withdrew, he would proceed and wanted to proceed to trial. He would withdraw and proceed to trial with a judge who had heard his guilty plea and had read the PSR, which is why I don't think that the defendant's right that this should go back to a different judge. Well, my question then to you is why the need to vacate the conviction? Because there are numerous district judges who at the time of taking and accepting the defendant's plea will defer the decision as to whether to accept the binding plea agreement until the time of sentencing. The court orders, as you indicated, the PSR at the time of sentencing will then decide whether to accept the binding plea agreement or not. So here, when we put the defendant in the same position by vacating or remanding for sentencing purposes only, then if Judge Wilson then has the opportunity to be presented with a binding plea, he can decide whether to accept or reject it. And if he rejects it, the defendant then gets an opportunity to withdraw his guilty plea, just as if he went before a different district judge who has the practice of deferring acceptance of the binding plea agreement until the time of sentencing. Doesn't that work out to be the same? In a world of less arcane procedural rules, you would be absolutely right, Your Honor. But my understanding, and I don't mean to – the court may be correct and I may be incorrect, is that what ordinarily happens is that the plea is accepted but conviction is not entered until the court accepts the binding plea. In other words, the defendant's in a kind of limbo until the binding plea is accepted. And the reason why was explained by Justice Sotomayor in her concurrence in the Supreme Court's recent 3582 case, and I apologize, I don't remember the name. But she basically says once a conviction is entered on a binding plea agreement, at sentencing, the judge has nothing left to do but to enter the sentence that the parties agreed to. The point at which the judge has the option of not giving that sentence is the point of conviction. And so, you know, Mr. Larson's request for resentencing and what you're saying, Your Honor, it makes perfect sense from a functional standpoint. It's just not how the rules are designed to operate, I don't think. And, I mean, I'm happy to discuss the remedy further. I'd like to also just briefly discuss whether it should go back to a different judge. Well, I'm having, you know, at first I thought, you know, I know Judge Wilson. He can be a fair judge. And it probably, now that he realizes that this blanket policy that he had is wrong, that he would be fair in going forward. But as I reread Ellis, which I wrote, I do remember having some hesitation about that, not because I didn't respect the ability of the district judge to be a fair person and try to put all this out of his mind, but because for the appearance of justice to preserve the propriety of the whole criminal proceeding, someone who's already taken a guilty plea and sentenced him to a higher sentence than he would have had, than any one of these would have had, under the fast track plea agreement. It just, I just am beginning to think that maybe the defendant's position is a little more persuasive, given this really unique situation that we're facing. Well, let me start by saying I think it's really the court's prerogative to decide what's necessary to preserve the appearance of justice. So the government's not going to, you know, scream bloody murder if it goes back to a different judge. I do, though, you know, I at least sort of want to present the argument and let the court take it as it is. I think Ellis, though obviously you know the case better than I do, Judge Wardlaw, is quite different factually. There the district court said he would not proceed under any circumstances in any plea agreements or any pleas. And then he went on to express strong views of the PSR's contents. The parties protested his refusal to accept the plea agreement they proffered. Here it's quite different. The district court didn't express these sort of strong views. He didn't say I'm not going to take any plea. He took a plea. He took a plea in all the cases. He took the only plea that the parties actually tried to get him to take on the record. Now, you know, I think that it's fair for the court to consider the fact that the parties did initially ask for a binding plea. I think absolutely the defendants should get relief in this case. But I do think to basically tell Judge Wilson you can't be trusted whether the appearance of justice would be � I think it would be unfortunate for a district court judge to be told they can't keep their case on the basis of an error that the parties never brought to the court's attention for not accepting a plea agreement the parties never asked for. Well, there's the whole argument about how futile it would be. I mean, each defendant in this case, first they filed a binding plea agreement, and then they found out they had Judge Wilson, and he had made this strong statement. So it would have been futile to have a binding plea agreement. I think it would be unfortunate for a district court judge to be told they can't keep their case on the basis of an error that the parties never brought to the court's attention for not accepting a plea agreement the parties never asked for. Well, there's the whole argument about how futile it would be. I mean, each defendant in this case, first they filed a binding plea agreement, and then they found out they had Judge Wilson, and he had made this strong statement. So it would have been futile to try to go against that. Well, I don't want to � I � first of all, the defendants deserve relief, so I don't want to in any way compromise that position. Yeah, and I can understand why Judge Wilson took that position, too. I remember when they instituted it in the Southern District, and I thought, you can't do this. You know, that's not right to have a blanket rule either way. Yeah. So I can understand his position on the merits, but� It wouldn't have been futile, given that when the defendants actually complained about it, the first time they did, he changed his policy. So I don't want to compromise that position. So I don't want to compromise that position.  So I don't want to compromise that position. I mean, granted� He had to. Well, he didn't. I mean, they took a mandamus, but the mandamus wasn't ruled upon. He just looked at it, realized that his position was wrong, and stopped enforcing the policy. So, you know, I actually think the likelihood is that if the government and the public defender's office had sort of pushed him on these cases, maybe they could have gotten relief. Well, the other question, the other thing that's troubling me about all this, too, is hasn't everybody really lost the benefit of the fast-track plea at this point? You know, they're� Well, in terms of those efficiencies. The efficiencies that, I mean, it's� The defendants should get the� Yeah, we're on appeal. The defendants need to get the four-level benefit. Presuming the defendants are willing to plead again to fast-track, I think they deserve the four-level benefit. They shouldn't lose that benefit because they had to make the effort to fix the record in this case. So I don't � I would be surprised if Your Honor was suggesting they shouldn't get the benefit, but� No, no, I'm not. The one other reason why I think that sending it to a different judge is probably not appropriate here is just the Mancinas-Flores case, which postdates Ellis, cites Ellis for not sending it back to a different judge. There, the court refused to accept a guilty plea, presided over a trial. The sentence was imposed. The defendant went up, and it went back down to the same judge to decide whether to accept the guilty plea, and the judge said no.          They don't mind it. That case, I think, is actually would have been a stronger case, a much stronger case, for sending it to a different judge than these are. Because, as I said, here you don't have a trial. In all likelihood, it's going to go back. It's going to be a guilty plea. It's not going to be a trial. As far as I know, the defendants don't have any trial defenses. I think what everyone wants is just to have the sentence that the parties agreed upon imposed. So I think, though, it's a more sympathetic case for going back to the same judge than Messina's force. But, as I say, that's not, I think, a particularly critical issue. The government would prefer – even prefers the wrong word. I just think the ordinary course is that things go back to the same judge. I think this is not such an extraordinary case that it shouldn't. The last thing I would just say on this issue is that, at least nominally, I do think the court needs to make a case-by-case determination here, whether the cases should go back to the same judge. Obviously, if your view is that the problem is that Wilson had this policy and the policy was applied in all these cases, then it may be that you reach the same decision. But I don't think that it should all sort of be lumped together, particularly because in Leon-Leon, there's no challenge to the sentence that the court imposed. There's no argument that it's procedurally unreasonable or that it's substantively unreasonable. And so there, it seems particularly strange to say we can't – it would be improper to send you back for re-sentencing in front of a judge who imposed a sentence no one is saying is improper. So do you have any knowledge about how many – I'm trying to make an individual decision about whether we should be publishing – right now, the cases are consolidated for argument alone, not consolidated for disposition. So I'm trying to figure out whether we should just take one of them and publish it, and then so the rest of the cases kind of fall in line, and then – Yeah. As far as I know, these are the only pending cases with this issue. There is one other case where Judge Wilson also did not take a binding plea, but the defendant is not asserting that error. Defendant waves – notes the error and then says that's not what we're arguing. We're challenging the substantive and procedural reasonableness of the sentence alone. It may be – as I understood, Mr. Larson, there may be a case that has – there's a notice of appeal filed, but it hasn't been brought. I will tell you the government would stipulate to whatever the remedy is in this case, I think the government would be prepared to concede the same remedy in the other case. And, you know, we would cite an unpublished decision, which is, of course, citable even though it's not binding. And I would be stunned if the court's office didn't just send it back. Wilson's – sorry. Judge Wilson's policy is, again, as far as I know, over with. In every case, what he's now doing is the proper course, which is he conditionally accepts the plea, he orders the PSR, he looks at the PSR and decides whether or not to accept the binding plea. And there are no other judges that I know of in the central district, nor am I aware of this happening in other districts where the courts are not following it, the correct fast-track procedure. So since the elimination of the plea, the government has been presenting – or the parties have been presenting binding 1326 plea agreements to Judge Wilson. And he has been accepting them. There was a period at – while the mandamus petition was pending where the – what the parties were doing was presenting memoranda saying you've got to accept this with the plea. And then once Judge Wilson retracted his position in the case where there is the mandamus petition, since then I'm not sure the parties are even submitting the memoranda. I think they're just giving him the binding pleas and Judge Wilson is handling them the correct way. Counsel, you said something about possibly Leon Leon being treated differently for disposition. I'd like you to elaborate on that because my understanding is in that case the defendant filed the binding plea agreement after it was assigned to Judge Wilson, withdrew it and submitted a different – or it didn't withdraw, but submitted a non-binding plea agreement, and that under the original binding plea agreement, if there would have been the four-level reduction under the fast-track program, the guideline range would have been three months. In fact, under the non-binding plea agreement, this defendant got 30 months. So why should Leon Leon be treated differently? He should – Defendant Leon Leon should absolutely have his sentence, conviction and plea vacated and go back like the other ones. This is purely on the question of whether it should be remanded to a different judge, which I think has to be a case-by-case determination. The difference in that case and the other two, which is not a huge difference but I think is relevant, is that the other two defendants are arguing that the above fast-track binding plea agreement sentences were substantively unreasonable. In other words, they're saying not only did we not get the sentence we got, we got one that was unreasonable. Leon Leon is not bringing that claim. And so how that weighs in the balance, if the Court's inclined to resolve it simply because Judge Wilson's policy is so troubling from an appearance of justice standpoint, probably it doesn't weigh much in the balance. But if the Court is looking at them on an individualized basis and asking, you know, is it reasonable to expect that the district court judge would be able to fairly decide this case, I think Leon Leon is the strongest case for it going back to Judge Wilson, although, again, my view is that under Mancinas-Flores, all of the cases should go back to Judge Wilson. Thank you, Your Honors. Thank you. Gershengorn Your Honors, it seems the parties agree on a lot. I'll just speak to the reassignment question. Mr. O'Halloran is right. The ordinary course is to send the case back to the same judge. But as Judge Wardlaw has recognized, this is not the ordinary case. This is a highly unusual case in which a policy which is in plain violation of the rule, apparently now has been abandoned, but these individuals have been prejudiced by it. The judge in this case has already reviewed their sentencing submissions, reviewed the PSR, decided on the merits to give them much higher sentences than the negotiated terms, and when these cases are remanded, if they are remanded to him, he will be in the position of potentially presiding over a trial at which they confess their guilt or at a sentencing hearing in which he is asked to put out of his mind all the decisions on the merits that he's already made. I'm not saying the judge can't do this. I'm not saying he's incapable of it. But I'm saying that in the interest of preserving the appearance of justice, as this Court did in Ellis, that cases should be reassigned to a different judge. And just to speak briefly to Mr. Leon as to whether that should be reassigned, the fact that we didn't bring a substantive unreasonableness challenge to the sentence does not mean that Mr. Leon has no objection to the sentence. The standard for making out a substantive unreasonableness threshold is rather high, and we elected not to make it in that particular case. But Mr. Leon in no way concedes that his 30-month sentence, which is two-thirds longer than what he would have gotten under the negotiated plea, is the just sentence in his case, is the appropriate sentence in his case. So, and putting that aside, we still have the fact that, again, in all three cases, the judge has already reviewed everything on the merits, made a determination that if we now send it back to him, we're going to be asking to throw out, in addition to the fact that this policy of his has now been or will be potentially declared to be plainly unreasonable. Given these unique facts and these unusual circumstances, it's better to err on the side of caution to preserve the appearance of justice. It's not that the judge can't be trusted. It's that the appearance of justice is better served by remanding this to someone else to take a fresh look on a fresh slate. All right. Well, thank you. Thanks, both counsel, for elucidating these issues further and your supplemental briefing, which was very well done, too. So thank you very much. And these cases will be submitted.
judges: Simon, Wardlaw, Nguyen